IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| Gulf States Regional Center, LLC, | ) | C/A No.: _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Ur Jaddou, Director, U.S. Citizenship and Immigration Services, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**COMPLAINT**

Over the past four years, private equity renovated, reopened, and reinvigorated the former World Trade Center at 2 Canal Street. This major construction project is a boon for the City of New Orleans, creating new jobs, greenspace, and architectural marvels. However, the project, like all individuals and businesses, is feeling the crunch of the recent inflation reduction measures, primarily the significant increases in the interest rates. The project therefore needs less expensive capital to realize its full potential.

Plaintiff Gulf States Regional Center, LLC—through two new companies—has agreed to provide the project with such capital. The Plaintiff seeks to raise this capital through foreign investors in compliance with the "EB-5 visa program." But Plaintiff's efforts are being held up by an adjudicatory delay in processing an application that will "pre-approve" the investment for use as a basis for an "EB-5" immigrant visa. While the Defendant's 10-month delay may seem reasonable in comparison to a lot of immigration benefit request delays, Plaintiff's delay case is unprecedented because Congress only enacted the benefit Plaintiff seeks on March 15, 2022, when it mandated the Defendant to adjudicate such applications in 180 days.

As explained below, in March of 2022, Congress mandated Defendant to determine the cost of adjudicating such new immigration petitions within six months. Defendant (presumably) did the analysis, issued the form, and announced a premium filing fee ($17,795). But now, nearly a year later, Defendant has still not issued a decision in spite of the fact that the Plaintiff's petition requires significantly less work than a traditional petition as explained below. This Court should compel final agency action to ensure the maximum potential at 2 Canal Street is realized.

## PARTIES

1. Plaintiff Gulf States Regional Center, LLC, is organized under the law of Florida. It sponsored Pathways 4S NOLA QP Fund LLC and Pathways 4S NOLA Fund LLC, whose sole purpose is to raise and invest capital for a commercial construction project in New Orleans at 2 Canal Street.

2. Defendant Ur Jaddou is the current director of United States Citizenship and Immigration Services. In her official capacity—the only capacity in which she is sued—she is responsible for timely adjudicating all immigration benefits requests including Forms I-956F, Application for an Approval of an Investment in a Commercial Enterprise.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 106 (1977).

4. Under its federal question jurisdiction, this Court can hear claims under the Administrative Procedure Act (5 U.S.C. § 501, *et seq.*) ("APA").

5. Under the APA, this Court can compel agency action that is unreasonably delayed or unlawfully withheld. 5 U.S.C. §§ 555(b), 706.

6.  Under its federal question jurisdiction, this Court can also provide declaratory relief under 28 U.S.C. § 2201.

7.  Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District and Division.

8.  Plaintiffs have exhausted all administrative remedies or constructively exhausted all administrative remedies. *Darby v. Cisneros*, 509 U.S. 137 (1993).

## LEGAL BACKGROUND

9.  Congress created the "EB-5" immigrant visa as part of the Immigration Act of 1990. 104 Stat. 4978, P.L. 101-649 (Nov. 29, 1990).

10. Generally, an EB5 visa is available to a foreign national who invests the requisite amount of capital[1] into a new commercial enterprise that creates 10 jobs for lawful American workers. 8 U.S.C. § 1153(b)(5).

11. EB-5 investments were originally limited to "direct investments"—one foreign national invested the requisite amount in a new company and that company directly created the requisite jobs.

12. In 1992, Congress passed legislation to allow EB-5 investors to pool their investments, thereby allowing EB-5 investors to fund much larger projects. *See* The Departments of

---

[1] For most of the EB5 program's history, the minimum EB-5 capital investment was $1 million dollars. This minimum amount was reduced to $500,000 where immigrant investors select qualifying EB-5 projects with principal places of business in a "Targeted Employment Area," specifically a geographic location in "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)." 8 U.S.C. § 1153(b)(5)(B)(iii); *see also* 8 C.F.R. § 204.6(j)(6). Those minimum amounts were raised in November 2019 to USD 1.8 million and $900,000, respectively. *See* 84 FR 35750 (Jul. 24, 2019). These amounts then changed again in March 2022 to $800,000 and $1,050,000 under the RIA. 8 U.S.C. § 1153(b)(5)(C)(i)-(ii)

3

Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, § 610, 106 Stat. 1828, P.L.102–395 (Oct. 6, 1992).[2]

13. To take advantage of the more generous terms for a pooled investment,[3] investors would need to invest through an approved "regional center."

14. A "Regional Center" is a corporate entity that "is involved with the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment." 8 C.F.R. § 204.6(e).

15. Prior to 2022, Private or public entities apply to USCIS to acquire regional center designation on I-924, Application for Regional Center Designation Under the Immigrant Investor Program.

16. Once approved, new commercial enterprises associated with designated Regional Centers may take advantage of the generous job creation methodologies for pooled EB-5 investments.

17. Regional Center related EB-5 petitions dominate USCIS's modern inventory of EB-5 filings, accounting for the vast majority of visas issued in any given year. *See, e.g.,* Preference Visas Issued for FY 2018. This dominance is due in no small part to USCIS's "exemplar" approval of new commercial enterprise associated with Regional Centers which was also

---

[2] Though originally designated as a "pilot program," the Regional Center model has been in place since 1992 (with occasional, innocuous gaps due to recurring sunset provisions), and congress removed the word "pilot" in 2012. *See* Policy Memo, USCIS, PM-602-0083, EB-5 Adjudications Policy, (May 30, 2013).

[3] Unlike a direct EB-5 petition, a "Regional Center" EB-5 petition may rely on indirect job creation—a Regional Center new commercial enterprise may show job creation through economic modeling based on, for example, the impacts of construction spending. *See* 8 C.F.R. § 204.6(m)(7)(ii). A new commercial enterprise associated with a Regional Center similarly need not make any direct W-2 hires. Regional Center related petitions generally accommodate larger numbers of investors in the same new commercial enterprise because of job creation scaling. A given project might, for example, create hundreds or thousands of jobs, calculated through "reasonable methodologies" as contemplated by 8 C.F.R. § 204.6(m)(7)(ii), evidenced through an economist's job creation report using accepted econometric models such as RIMS II or REDYN.

accomplished by filing an I-924 along with all the project documentation (private placement memorandum, operating agreement, economic report, and other documents) for the project detailed below.

18.     In December 2009, USCIS instituted a pre-approval policy for potential new commercial enterprises associated with a particular Regional Center. *See* USCIS, Adjudication of EB-5 Regional Center Proposals and Affiliated Form I-526 and Form I-829 Petitions; Adjudicators Field Manual (AFM) Update to Chapters 22.4 and 25.2 (AD09-38), HQ 70/6.2, AD 09-38 (Dec. 11, 2009).

19.     Under this pre-approval process, Regional Centers are permitted to submit a Form I-924 with an "exemplar" EB-5 petition, which provided all of the necessary details for the potential new commercial enterprise: "a regional center may provide an exemplar Form I-526 with the supporting documentation required by 8 CFR 204.6 in order to determine if the documentation is EB-5 compliant, and thus can generally be favorably acted upon if submitted unaltered in support of an actual Form I-526 petition." *Id.* at 5.

20.     If a Regional Center's exemplar new commercial enterprise is pre-approved, USCIS will defer to the project-wide aspects of the new commercial enterprise if/when it receives *actual* EB-5 I-526 (now, I-526E) petitions based on the approved exemplar: "If the evidence provided remains unchanged from the documentation that was the basis for the approval of the regional center proposal, then the prior approval of the capital investment structure and the job creation methodology should generally be given deference." *Id.* at 13.

21.     In practice, the exemplar policy gives Regional Centers the ability to develop new commercial enterprises, get them pre-approved, and *then* offer them to potential investors.

22. "Exemplar approved" new commercial enterprises are very attractive to potential investors as they, in theory, present a higher chance of approval of their EB-5 petition because USCIS has already adjudicated the offering of the new commercial enterprise to be EB-5 compliant.

*The EB-5 Reform and Integrity Act of 2022*

23. On March 15, 2022, Congress passed the EB-5 Reform and Integrity Act of 2022 ("the Act"). P.L. 117-103, 136 Stat. 1070 (Marc. 15, 2022) (attached as Ex. A).

24. As part of the Act, Congress condoned and legislated the "pre-approval" process described above.

25. Under the Act, existing and new Regional Centers are required to file Form I-956F, Application for Approval of an Investment in a Commercial Enterprise before they can offer a new security to a potential investor. The Act, § 103(b)(1)(F).

26. The only material difference between the analysis under the Form I-924 exemplar process and the new I-956F is that the I-956F requires the Regional Center to demonstrate it has complied with the additional requirements under the Act, namely: (1) there are policies and procedures in place by the Regional Center "reasonably designed" to ensure compliance by the Regional Center, issuer, and any agent or party associated with the offering, with: (a) the securities laws of the United states and (b) state securities laws; (2) a certification that those parties in (1) aforementioned are in compliance; and (3) that there is at least one (1) direct job out of the ten (10) required created (note that the direct job can also be model derived).  The Act also empowers USCIS to be the arbiter of whether a project is located in a TEA.  Previously, the states were in charge of issuing a TEA letter which the USCIS gave deference to unless there was a mathematical error in calculating the unemployment numbers.

27.     When the Act was passed, USCIS initially took the position that all legacy Regional Centers were automatically de-certified. *Behring Reg'l Ctr. LLC v. Mayorkas*, No. 22-CV-02487-VC, 2022 WL 2290594, at *2 (N.D. Cal. June 24, 2022).

28.     After that was enjoined, USCIS agreed to the following for pre-Act Regional Center ("legacy regional centers").

29.     Under the compromised resolution, USCIS agreed to accept Forms I-956F from legacy regional centers and agreed to consider previously approved I-924s filed under the prior law as binding:

> 2. Previously Approved Regional Centers must file Form I-956F for previously approved exemplars (Form I-924) adjudicated prior to enactment of the Integrity Act if any investors associated with the Previously Approved Regional Center intend to file a petition for EB-5 classification after the enactment of the Integrity Act based on an investment into the offering and capital investment project described in the previously approved exemplar.
>    a. The purpose of this filing is to assimilate the project's information and documents consistent with the Integrity Act.
>    b. Consistent with the Integrity Act, *all aspects of the project previously approved in the I-924 amendment exemplar shall be binding for purposes of the new I-956F filing,* unless one of the conditions enumerated in Section 1153(b)(5) (F)(Li) (I-(V) is present. This does not apply to the new requirements imposed by the Integrity Act; USCIS may review any new elements and ask for additional clarification when needed under existing processes (i.e., Request for Evidence). Changes made to a business plan- or any other aspect of the approved exemplar--made to comply with the Integrity Act shall not constitute a material change.

*EB5 Capital, et al., v. United States Dep't Homeland Security*, No.: 3:22-cv-3948-VC, ECF No. 47-2, at ¶ C(2) (N.D. Cal. Aug. 24, 2022) (attached as Ex. B).

30.     Thus, for legacy Regional Centers who had an exemplar (I-924) approved under the prior law, they must file a Form I-956F but USCIS need only decide and approve the requirements from the new Act. In other words, a decision on a Form I-956F for a legacy Regional Center with

a previously approved I-924 is approximately seventy five percent (75%) of the work required to decide a new I-956F. USCIS does not have to look at any of the initial EB-5 requirements as nearly none has changed.

31. The only additional requirements it needs to confirm are: (1) there are policies and procedures in place by the Regional Center "reasonably designed" to ensure compliance by the Regional Center, issuer, and any agent or party associated with the offering, with: (a) the securities laws of the United states and (b) state securities laws; (2) a certification that those parties in (1) aforementioned are in compliance; and (3) that there is at least one (1) direct job out of the ten (10) required created (note that the direct job can also be model derived). The Act also empowers USCIS to be the arbiter of whether a project is located in a Targeted Employment Area ("TEA"). Previously, the states were in charge of issuing a TEA letter which the USCIS gave deference to unless there was a mathematical error in calculating the unemployment numbers. 8 U.S.C. § 1153(b)(5)(F)(i)(V)(vi).

32. USCIS maintains a dedicated Immigrant Investor Program Office ("IPO") to handle all EB-5 related filings, including Forms I-956F. The IPO is in the District of Columbia.

33. The IPO does not receive funds appropriated by Congress. Rather, it is required to charge fees to cover the cost of adjudicating EB-5 related petitions in a reasonable amount of time.

*The Gulf States Regional Center LLC*

34. Plaintiff Gulf States Regional Center, LLC ("the GS Regional Center") is a long-time approved regional center with a geographic area comprising parts of Florida, Alabama, Mississippi, Louisiana, and Texas.

35. The GS Regional Center received (and paid fees for) two I-924 exemplars for the World Trade Center Project in New Orleans under the prior law.

36. But in compliance with USCIS's recent interpretation of the Act, the GS Regional Center filed two additional Forms I-956F on August 1, 2022 and paid additional fees, totaling more than $35,000.

37. USCIS received them and assigned them receipt numbers INF2260000710 and INF2260000709.

38. The project has already raised $47.6M. Moreover, it has already created an excess of 4,400 jobs.

39. USCIS need only consider the new requirements under the Act to make final decisions on these I-956Fs. While GS Regional Center is able to solicit investment with the pending I-956F, potential EB-5 investors are very savvy, and they are aware of the new process. Thus, they are aware that GS does not have an approved I-956F yet and they are withholding investment until GS acquires an approved I-956F.

40. Because GS Regional Center has agreed to provide capital to the developer of the World Trade Center Project, GS Regional Center is now responsible for acquiring the full-amount of the capital from investors. If it is unable, then the World Trade Center project will not reach its full potential—jobs will be lost, marketing will not be done, and the project will plateau.

41. Because the GS Regional Center relied on USCIS to make a decision on their I956Fs in a reasonable amount of time, GS Regional Center is in a difficult position while the I-956F remains pending.

42. This delay is harming GS Regional Center and could result in its inability to continue in the marketplace.

## FIRST CAUSE OF ACTION
## (APA – UNREASONABLE DELAY)

43. Plaintiff re-alleges all allegations herein as though restated here.

44. The APA requires USCIS to make a decision on Plaintiff's application "within a reasonable amount of time." 5 U.S.C. § 555(b).

45. USCIS has a non-discretionary duty to make a decision on the GS Regional Center's pending I-956F Forms. *See* The Act, § 105(b)(2).

46. USCIS has unreasonably delayed action on Plaintiff's pending I-956F applications.

47. This is an unreasonable delay under the factors laid out in *Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984). Those factors comprise:

> (1) "the time an agency takes to make a decision should be governed by a 'rule of reason' "; (2) "[t]he content of a rule of reason can sometimes be supplied by a congressional indication of the speed at which the agency should act"; (3) "the reasonableness of a delay will differ based on the nature of the regulation; that is, an unreasonable delay on a matter affecting human health and welfare might be reasonable in the sphere of economic regulation"; (4) "the effect of expediting delayed actions on agency activity of a higher or competing priority . . . [and] the extent of the interests prejudiced by the delay"; and (5) "a finding of unreasonableness does not require a finding of impropriety by the agency."

*Id.*

48. First, USCIS has no rule of reason for the adjudication of Forms I-956F

49. USCIS does not decide them on a "first in, first out" basis.

50. The GS Regional Center is aware that USCIS has granted a filed Form I-956F which the Regional Center believes did not have a previously approved I-924 exemplar. This means that the time to adjudicate the granted I-956F was substantially more than the Plaintiff's.

51. Moreover, USCIS takes fees from petitioners in exchange for timely adjudicating Forms I-956F and took fees from the Plaintiff for the two I-924 exemplar petitions it filed which were approved prior.

52.     Congress required USCIS to set a fee that would allow it to decide Forms I-956F in 180 days. The Act, § 105(b)(2).

53.     USCIS issued Form I-956F in 2022 and charged $17,795 to satisfy Congress's mandate. 87 Fed. Reg. 54233, 54234 (Sep. 2, 2022); 87 Fed. Reg. 79343 (Dec. 27, 2022).

54.     Thus, USCIS should adjudicate Forms I-956F in 180 days.

55.     Second, Congress has provided clear content to any rule of reason by requiring USCIS to issue a form and formulate a cost that would allow USCIS to issue decisions in 180 days. The Act, § 105(b)(2).

56.     This is consistent with Congress's aspiration to decide immigrant visa petitions in 180 days. 8 U.S.C. § 1571(b). Thus, Congress indicates it should take 180 days to act on an immigrant benefit request and USCIS purports to follow this legislative aspiration.

57.     Similarly, USCIS created the, initially discretionary, pre-approval process, formerly known as "I-924 exemplar," to streamline and speed up adjudications of the underlying EB-5 petitions.  As mentioned, the Plaintiff in fact filed two I-924 exemplar petitions which were approved.  USCIS continued this streamlined approach under the Act now *requiring* that all projects first file the I-956F prior to an individual investor's I-526 (now, I-526E).

58.     This Court should not consider USCIS's published processing times dispositive of whether a delay is reasonable because the processing times for Forms I-956F are inconsistent and not credible and, "depending on the grounds for the delays, even processing times at the low end of the range could be unreasonable." *Raju v. Cuccinelli*, No. 20-cv-01386-AGT, 2020 U.S. Dist. LEXIS 153269, at *6 (N.D. Cal. Aug. 14, 2020).

59. Third, the Agency's delay impacts human health and welfare, not merely economic interests. USCIS prevents GS from marketing a pre-approved security to potential investors, which puts at risk the creation of jobs for American workers.

60. Fourth, compelling agency action here would have no effect on a USCIS activity of a higher or competing priority. The agency staffs an office whose sole mission is to process Forms I-526 and I-526E, Forms I-829, Forms I-956, and Forms I-956F. By statute, the agency is required to charge a fee that recaptures the actual expenses incurred in the adjudication process. The funds taken through application receipts are sufficient to accomplish the task of adjudicating within six months.

61. The current delay of GS Regional Center's I-956Fs is not due to a lack of agency resources because USCIS sets the fees it charges to pay for personnel to process petitions in a timely fashion.

62. It strains credulity to say compelling government action to make a decision would only put Plaintiff's applications to the front of the line. *See TRAC*, 750 F.2d at 80 (noting courts should consider the prejudice to the agency's claimed interest). There is no line because USCIS does not adjudicate Forms I-956Fs on a first in first out basis.

63. Finally, there is no rational or benign explanation for processing time taking more than six (6) months especially when given the fact that more than seventy five percent (75%) of the work to be performed was already done by USCIS and paid for under the I-924 exemplar approval. When seen in context of the agency's overall approach to its statutory requirements, the circumstantial evidence of impropriety is palpable. Defendant has taken affirmative actions, unknown to the public, to purposefully delay adjudications of EB-5 petitions. However, this Court need not find such evidence to find the delay is unreasonable.

64. Each TRAC factor weighs in favor of ordering USCIS to issue a decision on Plaintiff's applications; thus, USCIS's delay is arbitrary and capricious under 5 U.S.C. § 706.

65. Plaintiff demands discovery from Defendant to develop the administrative record, and establish its delay is unlawful, intentional, and targeted at a specific and identifiable group. This includes discovery, requests for production, interrogatories, and depositions of IPO Chief Sarah Kendall, her senior IPO staff, as well as supervisors and adjudicators who have been assigned to process these petitions.

66. This delay is not substantially justified.

## PRAYER FOR RELIEF

Plaintiff prays that this Court will:

67. Declare all delays described above in adjudication of Forms I-956F unreasonable;

68. Enter an order compelling the Agency to make a decision on Plaintiff's Form I-956F within 14 days, and if the Agency issues a request for additional evidence, order the Agency to make a final decision thereon within 30 days of its receipt of the Plaintiff's response to the request for evidence; and

69. Enter and issue other relief that this Court deems just and proper.

April 24, 2023                              Respectfully submitted,

/s/ Kathleen Gasparian
By: Kathleen Gasparian
La. Bar Roll #28044
Gasparian Spivey Immigration
829 Baronne St.
New Orleans, LA 70113
Tel. (504) 262-9878
Fax (504) 581-7651
kathleen@gsimmigrationlaw.com