## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GULF STATES REGIONAL CENTER, LLC** | **CIVIL ACTION NO: 23-CV-1354** |
| **VERSUS** | **JUDGE DARREL JAMES PAPILLION** |
| **UR JADDOU, DIRECTOR OF UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES** | **MAGISTRATE JUDGE MICHAEL NORTH** |

## ORDER AND REASONS

Before the Court is a Motion for Preliminary Injunction filed by Plaintiff Gulf States Regional Center, LLC ("Gulf States"). R. Doc. 7. Defendant Ur Jaddou, Director of the United States Citizenship and Immigration Services ("USCIS"), opposes the motion. R. Doc. 11. For the following reasons, Gulf States's motion is **DENIED**.

## FACTUAL BACKGROUND

As part of the Immigration Act of 1990, Congress established the employment based, fifth preference investor visa program ("EB-5"), giving foreign nationals the potential to become lawful permanent residents if they invest at least one million dollars[1] in commercial enterprises that will create at least ten full-time jobs in the United States. Public Law No. 101-649 § 121(a) (Nov. 29, 1990). In 1992, Congress expanded the EB-5 program with the "Regional Center Program," allowing foreign national investors to "satisfy the EB-5 employment-creation requirement by creating jobs directly through a minimum investment into a designated regional center." *Da Costa v. Immigr. Inv. Program Off.*, No. 22-CV-1576, 2022 WL 17173186, at *1 (D.D.C. Nov. 16, 2022) (quoting *Bromfman v. USCIS*, No. 21-CV-571, 2021 WL 5014436, at *2 (D.D.C. Oct. 28, 2021)) (internal quotations omitted). Regional centers, business entities that coordinate foreign

---

[1] This amount can vary depending on the location of the investment project.

investment, make a profit by raising capital from foreign nationals investing the required capital amount in one of the regional center's approved job creation projects.  R. Doc. 11 at 13.

In March 2022, Congress overhauled the EB-5 program by passing the EB-5 Reform and Integrity Act of 2022 (the "RIA") in an attempt "to prevent fraud and to promote and reform foreign capital investment and job creation in American communities."  *Id.*; *see also* H.R. 2901, 117th Congress (2021-2022).   Initially, USCIS interpreted the new law to mean previously approved regional centers ("PARCs"), i.e., entities approved as regional centers under previous EB-5 legislation, lost their designation as regional centers and were required to be reauthorized as regional centers under the RIA ("RIA regional centers").   USCIS's position that the RIA undesignated all PARCs was enjoined in *Behring Regional Center, LLC v. Mayorkas*, No. 22-CV-02487, 2022 WL 2290594 (N.D. Cal. June 24, 2022).  Following the *Behring* decision, USCIS announced its amended position as to PARCs: they remain designated as regional centers *for existing projects and investors*, and can immediately participate in the reformed EB-5 program, but are required to file an Application for Regional Center Designation ("I-956 Application") to maintain their status as regional centers *for purposes of sponsoring new projects and new investors under the RIA* (the "Redesignation Rule").[2]  R. Doc. 11 at 13.

Gulf States is a PARC and, prior to the RIA, agreed to provide capital from EB-5 investors to complete the renovation of the Four Seasons Hotel at 2 Canal Street in New Orleans (the "Project").  R. Doc. 7-1 at 7.  On May 24, 2022, after USCIS announced the Redesignation Rule, Gulf States filed an I-956 Application, which remains pending before USCIS.  *Id.*  On April 24,

---

[2] The Court acknowledges USCIS does not consider this rule to require redesignation under the RIA because, as per its position, PARCs have never been designated under the RIA.  For clarity and ease, however, the Court uses the term "redesignation."

2023, Gulf States filed suit in this Court and, in its Amended Complaint, claims the Redesignation Rule violates the Administrative Procedure Act ("APA").[3]  R. Doc. 1 and 6 at ¶ 79.

On May 10, 2023, Gulf States filed a Motion for Preliminary Injunction asking this Court to enjoin USCIS from enforcing the Redesignation Rule.  The Court held a hearing on Gulf States's motion on July 7, 2023.[4]  R. Docs. 7-1 and 28.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 allows a federal court to issue a preliminary injunction if the moving party shows: (1) a substantial likelihood it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury absent an injunction; (3) its injury outweighs the threatened harm to the party it seeks to enjoin; and (4) a preliminary injunction will not disserve the public interest. *City of El Cenizo, Tex. v. Tex.*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)).  The third and fourth factors merge when the Government is the party opposing the preliminary injunction.  *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749 (2009).  "The plaintiff must carry the burden as to all four factors before a preliminary injunction may be considered." *Mayo Found. for Med. Educ. & Rsch. v. BP Am. Prod. Co.*, 447 F.Supp.3d 522, 528 (N.D. Tex. 2020) (citing *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013)).

A preliminary injunction is an extraordinary remedy "not to be granted routinely, but only when the movant, by a clear showing, carries [the] burden of persuasion on all . . . requirements." *Black Fire Fighters Ass'n v. City of Dall.*, 905 F.2d 63, 75 (5th Cir. 1990) (internal citations and quotations omitted); *see also Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249

---

[3] Gulf States also brought an undue delay claim in its Original and Amended Complaints, but the parties have since filed a Stipulation of Dismissal as to that claim.  R. Doc. 30.

[4] At the hearing, counsel for Gulf States and USCIS agreed there are no factual disputes at issue in this motion.

(5th Cir. 1994).  While the decision to grant or deny a preliminary injunction is ultimately left to the district court's discretion, granting "a preliminary injunction is to be treated as the exception rather than the rule." *InPhaseMining.com, LLC v. PetaWatt Massena, LLC*, No. 22-CV-140, 2022 WL 1715210, at *2 (E.D. La. May 10, 2022) (citing *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984) and quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)) (internal quotations omitted).

## ANALYSIS

### I.     *Whether the Court Has Subject Matter Jurisdiction*

As an initial matter, the Court must ensure it has subject matter jurisdiction over this case before addressing the merits of Gulf States's request for preliminary injunction.  USCIS argues because Gulf States's I-956 Application is still pending before USCIS there is no "final agency decision" over which the Court may exercise subject matter jurisdiction.  R. Doc. 11 at 17.  The Court reads USCIS's argument as an attack on its jurisdiction over Gulf States's undue delay claim only, which Gulf States has since voluntarily dismissed.  R. Doc. 30.  Out of an abundance of caution, however, and because of the Court's duty to independently assess subject matter jurisdiction, the Court will consider whether the Redesignation Rule, which Gulf States argues is the agency decision in this case, constitutes a "final agency decision."

"The [APA] provides judicial review of 'final agency action for which there is no other adequate remedy in a court.'"  *Data Mkting P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 853 (5th Cir. 2022) (quoting 5 U.S.C. § 704).  The Fifth Circuit considers finality "a jurisdictional prerequisite of judicial review."  *Id.* (internal citations omitted).  To be a final agency decision, (1) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature[;]" and (2) "the action must be one by which rights or

obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597, 136 S. Ct. 1807 (2016)) (internal quotations omitted).

The Redesignation Rule is a final agency action.  The Rule is USCIS's final position on the requirements for designation as a regional center under the RIA.  USCIS expressed this position in two notices for new I-956 Application forms and described the purpose of the forms as requests for "designation as a regional center" or "an amendment to an approved regional center."  R. Doc. 7-1 at 5.  USCIS reiterated the Redesignation Rule in a public engagement on October 19, 2022, and thereafter began implementing the Rule by reviewing and making decisions on I-956 Applications.  R. Doc. 7-1 at 5-6.  There is nothing in USCIS's declarations surrounding the Redesignation Rule, or its implementation of the Rule, that suggests it is not definitive of USCIS's requirement that entities seeking to be designated as regional centers under the RIA must file an I-956 Application.[5]

Moreover, there is indeed a legal consequence that results from the Redesignation Rule. USCIS is clear in its position that entities without an approved I-956 Application are not considered regional centers under the RIA which, of course, renders those entities unable to begin new projects or solicit new investors for existing projects.  This consequence, notably, is immediate.  While there is currently no deadline to submit I-956 Applications, until an entity files an I-956 Application (regardless of the deadline to do so), and it is approved, the entity is not considered a regional center under the RIA.  Because the Redesignation Rule is the consummation

---

[5] There is currently an "Alert" on USCIS's website extending the deadline to file I-956 Applications "until [USCIS] publish[es] guidance that clarifies the requirements of these forms."  R. Doc. 7-1 at 6.  This alert does not change USCIS's position on the Redesignation Rule, however.  As evidenced by this lawsuit and more specifically, this motion, USCIS maintains the effectiveness and validity of the Redesignation Rule and is presently carrying out this position by reviewing and deciding I-956 Applications filed pursuant to the Rule.

of USCIS's decisionmaking process and is a decision from which legal consequences flow, the Court finds the Rule is a final agency decision, and the Court may exercise subject matter jurisdiction over this matter.

II.      *Whether Gulf States Is Entitled to a Preliminary Injunction*

Turning to the merits of the motion, Gulf States urges the Court to issue a preliminary injunction, insisting it has met each of the elements necessary for it to be entitled to an injunction. First, Gulf States argues it has shown a substantial likelihood the Redesignation Rule is unlawful by showing it is arbitrary and capricious, *ultra vires*, and/or procedurally improper.  Specifically, Gulf States argues the Redesignation Rule is arbitrary and capricious because it lacks informed decision making and is *ultra vires* because "the RIA does not empower USCIS to require PARCs to do anything to 'keep' their pre-RIA designation." R. Doc. 7-1 at 12.  Alternatively, Gulf States argues the Redesignation Rule is procedurally improper because, according to Gulf States, the Rule is a legislative rule and under the APA, must go through a notice and comment period. Second, Gulf States argues, absent an injunction, it will be irreparably harmed because any decision on its I-956 Application will be so costly it will force Gulf States to go out of business. Finally, Gulf States contends equity favors an injunction because an injunction will protect jobs, fund a major project for New Orleans, and protect a company with a track record of success, and will not strip USCIS of any of its regulatory authority or result in any lost fees.

In response, USCIS argues Gulf States fails to establish any of the elements necessary for a preliminary injunction.  First, USCIS argues the Redesignation Rule is neither arbitrary and capricious nor *ultra vires* because the text of the RIA requires regional centers to be designated as such under the RIA.  USCIS also argues the Redesignation Rule is procedurally proper because it is an interpretive rule, and interpretive rules are not required to go through a notice and comment

period.  Second, USCIS argues Gulf States cannot show irreparable injury because its alleged injuries are speculative and limited to financial losses which, USCIS argues, cannot constitute an irreparable harm.  Finally, USCIS argues a preliminary injunction would be a disservice to the public interest because Gulf States's request "is not only a request for special treatment, . . . but it also directly flouts Congress's mandate to bring all EB-5 participants in line with its intent to reform the program, increase oversight, and eliminate fraud."  R. Doc. 11 at 30.

*A.  Whether There Is a Substantial Likelihood that Gulf States Will Succeed on the Merits*

The first requirement for a preliminary injunction requires Gulf States to show it has a substantial likelihood of establishing the Redesignation Rule is unlawful.  As explained above, Gulf States argues the Rule is unlawful because it is *ultra vires*, arbitrary and capricious, and/or procedurally improper.  The Court will consider each argument in turn.

*i.   Whether the Redesignation Rule Is* Ultra Vires *or Arbitrary and Capricious*

A court must review an agency's interpretation of a statute under the two-step *Chevron* framework. *City of Arlington v. FCC*, 569 U.S. 290, 306–07, 133 S. Ct. 1863 (2013). [6]  The first step of this analysis requires the court to determine "whether Congress has directly spoken to the precise question at issue."  *Chevron,* 467 U.S. at 842, 104 S. Ct. 2778.  In making this determination, the court must apply all the "traditional tools of construction," including "text, structure, history, and purpose." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415, 204 L.Ed.2d 841 (2019) (internal quotations and citations omitted).  Notably, if the "statute's text is clear, courts should not resort to legislative history" and "should not introduce ambiguity through the use of legislative history." *Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018) (citing *BedRoc, Ltd. v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587 (2004) (plurality opinion)).  "If the intent of Congress

---

[6] *Chevron, USA, Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984).

is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843, 104 S. Ct. 2778. If the statute is genuinely ambiguous, however, the court moves to the second step of the analysis, which requires it to ask, "whether the agency's construction is 'permissible.'" *Sw. Elec. Power Co. v. U.S. Env't Prot. Agency*, 920 F.3d 999, 1014 (5th Cir. 2019).

Gulf States argues the RIA's text does not require PARCs to become redesignated as RIA regional centers and contends this position is supported by the structure of the RIA. Subparagraph (E) of the RIA governs the regional center program and provides, in pertinent part:

> Visas under this subparagraph shall be made available through September 30, 2027, to qualified immigrants . . . pooling their investments with 1 or more qualified immigrants participating in a program implementing this paragraph that involves a regional center in the United States, which has been designated by the Secretary of Homeland Security on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment.

8 U.S.C. § 1153(E). Although Gulf States acknowledges subparagraph (E) governs the creation of a RIA regional center, it insists other provisions in the RIA reference PARCs, thereby contemplating the existence of both PARCs and RIA regional centers. Specifically, Gulf States points to a handful of provisions that refer to regional centers "described in subparagraph (E)," and compares those with provisions referencing regional centers "designated in subparagraph (E)."[7] R. Doc. 7-1 at 13. According to Gulf States, "[b]ecause subparagraph (E) 'reauthorized' PARCs, subparagraph (E) in fact does 'describe' all PARCs and RIA [regional centers]. But not all regional centers are 'designated under subparagraph (E),' only RIA [regional centers]; PARCs

---

[7] *Compare* § 103(b)(1)(G) (requiring annual statements from regional centers "designated" under the RIA), and § 103(b)(1)(G)(iii)(I)(bb) (allowing sanctions against regional centers "designated" under the RIA for certain conduct) with § 103(b)(1)(G)(iii)(II)(bb),(cc) (authorizing temporary and permanent bars for certain violations of law for regional centers "described" in subparagraph (E)) and § 103(b)(1)(K)(ii) (authorizing penalties against promoters associated with regional centers "described" in subparagraph (E)).

cannot be 'designated' under subparagraph (E) because . . . they were 'designated' prior to the enactment of the RIA." *Id.* at 14.  Gulf States offers a related argument by claiming "Congress used the phrase 'designated under subparagraph (E)' to identify RIA [regional centers] and it used the phrase 'designation of a regional center' to apply to all regional center designations, regardless of whether they were [PARCs or RIA regional centers]." *Id.*  Gulf States also points to subparagraph (S) of the RIA which requires USCIS to continue processing visa applications associated with a regional center filed before September 30, 2026.  Gulf States argues subparagraph (S) shows "all immigrant visa petitions filed before September 30, 2026[,] are authorized by the 'regional center program under subparagraph (E),' not only those visa petitions associated with regional centers 'designated' under subparagraph (E)." *Id.* at 15.

After careful consideration of the RIA as a whole, the Court concludes Congress intended to require PARCs seeking to operate as regional centers for the purpose of new projects and investors to seek designation as a regional center under subparagraph (E) of the RIA.  The text of the RIA, notably, does not mention PARCs or regional centers established outside of the RIA.  Nor does the structure of the text show Congress intended PARCs to be considered regional centers under the RIA.  Subparagraph (E), as explained above, provides visas to qualified foreign nationals participating in a program involving "a regional center . . . which *has been designated* . . . on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment."  8 U.S.C. § 1153(E).  The language—*has been designated*—supports the conclusion that all regional centers, including PARCs, are designated under subparagraph (E), and must therefore comply with subparagraph (E)'s designation requirements.  Moreover, the basis of the designation described in subparagraph (E) largely tracks the language of the 1992 Appropriations Act, which established the Regional Center Program.

The Appropriations Act stated that the "pilot program shall involve a regional center in the United States for the promotion of economic growth, including . . . job creation, and increased domestic capital investment."  Pub. L. 102-395, § 610(a), 106 Stat. 1828, 1874.  This language directly mirrors that of subparagraph (E), further solidifying the conclusion that subparagraph (E) governs PARCs and RIA regional centers.

The Court is not persuaded that Congress's references to regional centers "described in subparagraph (E)" and "designation of a regional center" are references to PARCs while Congress's references to regional centers "designated in subparagraph (E)," are references to RIA regional centers.  The first two phrases do not reference PARCs or otherwise distinguish them from regional centers under the RIA.  *Sunshine State Reg't Ctr., Inc. v. Jadduo*, No. 23-CV-60795, 2023 WL 3712916, at *10 (S.D. Fla. May 25, 2023), *report and recommendation adopted*, 2023 WL 3721710 (May 30, 2023) (finding these provisions do not mention or otherwise distinguish RIA regional centers from PARCs).[8]  Nor does Gulf States's reliance on subparagraph (S) show the RIA contemplated the existence of PARCs.  Subparagraph (S) provides:

> Notwithstanding the expiration of legislation authorizing the regional center program under subparagraph (E), the Secretary of Homeland Security –
>
> (i)     shall continue processing petitions under sections 1154(a)(1)(H) and 1186b of this title based on an investment in a new commercial enterprise associated with a regional center that were filed on or before September 30, 2026;
>
> (ii)    may not deny a petition described in clause (i) based on the expiration of such legislation; and

---

[8] Gulf States attacks *Sunshine State* by arguing the issue in that case was different than the issue here, and also claims it is unclear on what grounds the district court judge adopted the R&R.  Gulf States is not correct that these cases present different issues.  In *Sunshine State*, a PARC filed suit against USCIS arguing that a RIA provision which imposes fees on "each regional center designated under subparagraph (E)" does not apply to PARCs because PARCs are not designated under subparagraph (E).  2023 WL 3712916; *see* 8 U.S.C. 1153(J)(ii)(I).  The *Sunshine State* Court was thus forced to decide the exact issue with which this Court is tasked with deciding: whether PARCs are regional centers under subparagraph (E).  Moreover, Gulf States's argument concerning on what grounds the R&R was adopted is of no consequence.  This Court finds the federal magistrate judge's analysis to be sound and persuasive.

(iii)    may not suspend or terminate the allocation of visas to the beneficiaries of approved petitions described in clause (i).

8 U.S.C. § 1153(b)(5)(S).  This provision, however, merely protects investors who submit petitions through a PARC, and "a decision to protect investors . . . in a previously designated regional center is not equivalent to protecting the previously designated regional centers themselves from complying with the requirements of the [RIA]."  *Sunshine State*, 2023 WL 3712916, at *12.  The text of the RIA does not contemplate a regional center outside of one established under subparagraph (E) and, thus, the Redesignation Rule is not *ultra vires*.[9] [10]

### ii.    Whether the Redesignation Rule Is Procedurally Improper

The APA distinguishes between legislative rules and interpretive rules.  While legislative rules require the relevant agency to provide the public with a notice and opportunity to comment before the rule becomes final, interpretive rules do not.  *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101, 135 S. Ct. 1199 (2015).  Legislative rules "bind the public and courts in a manner indistinguishable from a statute."  *Flight Training Int'l, Inc. v. Fed. Aviation Admin.*, 58 F.4th 234, 240 (5th Cir. 2023) (internal quotations and citations omitted).  By contrast, an interpretive rule "is one that 'clarifies, rather than creates, law.'"  *Id.* (quoting *Pros. & Patients for Customized Care v. Shalala*, 56 F.3d 592, 602 (5th Cir. 1995)).  Interpretive rules "advise the public of the agency's construction of the statutes and rules which it administers."  *Perez*, 575 U.S. at 97, 135 S. Ct. 1199.  In issuing interpretive rules, an agency "does not claim to be exercising authority to

---

[9] Gulf States argues the Redesignation Rule is arbitrary and capricious because the sole basis for the Rule is Gulf States's initial position that the RIA undesignated all regional centers.  Gulf States argues because this initial position was ultimately enjoined by the *Behring* Court, the Redesignation Rule is based on a reading of the RIA that has no rational basis.  The Redesignation Rule, however, is based on USCIS's current reading of the RIA and, as explained above, this reading has a rational basis.  The Rule, therefore, is not arbitrary and capricious.

[10] Because the Court does not find the RIA to be genuinely ambiguous, it need not perform the second part of the arbitrary and capricious analysis and determine whether USCIS's construction of the RIA is "permissible."

itself make positive law." *Id.* (quoting *Syncor Intern. Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997)).

The Redesignation Rule is an interpretive rule.  USCIS did not create the Redesignation Rule on its own authority.  It is, instead, a direct result of USCIS's interpretation that the RIA requires PARCs to become designated as regional centers under the RIA for purposes of future projects and investors.  Thus, USCIS was merely advising the public of the RIA's construction, which fits squarely into the definition of an interpretive rule.  *Flight Training*, 58 F.4th 234, 240 (5th Cir. 2023) ("Interpretive rules advise the public of the agency's construction of the statutes and rules which it administers.") (internal quotations and citations omitted).  That Gulf States disagrees with USCIS's interpretation of the RIA does not render the Redesignation Rule a legislative rule.  The Redesignation Rule is an interpretive rule and, thus, is not procedurally defective for failure to go through a notice and comment period.

Gulf States has failed to show the Redesignation Rule is *ultra vires*, arbitrary and capricious, or procedurally improper.  It has, therefore, failed to meet its burden to show there is a substantial likelihood it will prevail on the merits of its unlawful rule claim.  "Because each of the preliminary injunction requirements must be satisfied, 'the absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law.'"  *Doherty v. Nat'l Bd. of Med. Exam'rs*, 791 F. App'x 462, 463 (5th Cir. 2019) (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012)).  Out of an abundance of caution, however, the Court will address the remaining factors.

*B.  Whether Gulf States Will Suffer an Immediate, Irreparable Injury Absent an Injunction*

The second requirement for a preliminary injunction requires Gulf States to show it will suffer an irreparable injury absent an injunction.  In general, a harm is irreparable for purposes of

a preliminary injunction if there is no adequate remedy at law, such as an award of monetary damages. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). The anticipated injury must also be "imminent." *ADT, LLC v. Cap. Connect, Inc.*, 145 F.Supp.3d 671, 694 (N.D. Tex. 2015) (citing *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975), *cert. denied*, 423 U.S. 930, 96 S. Ct. 279 (1975)).

Gulf States argues it will suffer an immediate, irreparable injury whether its I-956 Application is denied or approved. Gulf States specifically argues if its I-956 Application is denied, it will not be able to raise EB-5 capital for the Project, stay open for other potential developers, or offer any services in the future. On the other hand, if its I-956 Application is approved, Gulf States argues it will go out of business because of the fees it will be required to pay as a regional center under the RIA. Notably, every injury Gulf States anticipates is financial and while Gulf States acknowledges "economic harm is not typically irreparable," it argues "an economic threat that will force it to close its doors long before any damage could be awarded constitutes irreparable harm," and cites several cases it claims stand for this proposition. R. Doc. 7-1 at 17. Indeed, district courts within the Fifth Circuit have found "[i]n the Medicare withholding context, going out of business can be sufficient evidence of irreparable injury." *Med-Cert Home Care, LLC v. Azar*, 365 F.Supp.3d 742, 755 (N.D. Tex. 2019). Even assuming, however, going out of business can constitute an irreparable harm in non-Medicare cases, an issue this Court need not decide to resolve the instant motion, Gulf States has failed to establish a significant threat of irreparable harm.

If Gulf States's I-956 Application is denied and it is unable to operate as a regional center for new projects and new investors, Gulf States may bring itself into compliance with the RIA and file an amended I-956 Application to be considered a regional center under the RIA.  Gulf States argues even an approved I-956 Application will cause it to go out of business because, as a RIA regional center, "Gulf States [will] be required to pay approximately $50,000 per year for the next 15 to 20 years while its current investors await . . . full permanent residency."  R. Doc. 7-1 at 8.  The question before the Court, however, is not whether being forced to pay these fees until its investors become full permanent residents, or until the Project is complete, would cause Gulf States irreparable harm.  The question, instead, is whether paying these fees *until the Court decides the merits of Gulf States's claim* would cause irreparable harm.  *Miss. Power*, 760 F.2d at 629 ("[T]he single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm *before a decision on the merits can be rendered*.") (Garwood, J., dissenting) (citing 11 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2948) (emphasis added).  The Court does not read Gulf States's motion to argue it will suffer irreparable harm in the time it will take to decide this case.  Therefore, while additional fees may certainly cause Gulf States some financial injury, Gulf States has not adequately shown for purposes of a motion for preliminary injunction that such an injury is irreparable.

Moreover, Gulf States's delay in seeking an injunction undermines the argument it will suffer an irreparable injury absent an injunction.  *Crossover Mkt, LLC v. Newell*, 21-CV-640, 2022 WL 1797359, at *1 (W.D. Tex. Jan. 12, 2022) ("Undue delay in seeking a preliminary injunction tends to negate the contention that the feared harm will truly be irreparable.").  Gulf States filed its I-956 Application on May 24, 2022, less than two weeks after USCIS announced the

14

Redesignation Rule, but it did not file the instant motion for preliminary injunction until May 10, 2023, nearly one year after it filed its I-956 Application.  R. Doc. 7-1 at 7.  Gulf States attempts to explain this delay by arguing it filed its motion as soon as USCIS began approving other PARCs' I-956 Applications.  Gulf States concedes, however, that because it filed its I-956 Application "less than two weeks after Form I-956 was promulgated, it must be at the front of the 'line.'"  R. Doc. 7-1 at 9.  If anything, Gulf States's logic regarding its filing position called for it to bring a demand for injunctive relief sooner than it did here if it really believed it faced a threat of irreparable harm.  On the showing made, this Court cannot find Gulf States will suffer an irreparable injury if an injunction is not issued.

    *C.  Whether an Injunction Will Disserve the Public Interest*

        The final requirement for a preliminary injunction requires Gulf States to show that the equities weigh in favor of an injunction and that an injunction will not disserve the public interest.  Gulf States fails this final requirement, however.  An injunction would result in USCIS losing a significant amount of regulatory authority over PARCs.  Acceptance of Gulf States's position would remove PARCs from subparagraph (E), exempting PARCs from filing annual statements and from being subject to annual fees and the possibility of sanctions.  Enjoining USCIS from regulating entities the RIA is tasked with regulating would, contrary to Gulf State's contentions, amount to a disservice of the public interest.

### CONCLUSION

        For the foregoing reasons, **IT IS ORDERED** Gulf States's Motion for Preliminary Injunction (R. Doc. 7) is hereby **DENIED**.

New Orleans, Louisiana, this 4th day of August, 2023.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**